Nicholson, C. J.,
delivered the opinion of the Court.
The bill in this case was filed in the Chancery Court at Rutledge, for the construction of the will of Lewis Atkins, deceased.
The following are the clauses which we are called upon to construe:
Item 3. “I give and bequeath unto my beloved *555 wife, Elizabeth Atkins, the following described land, (setting out the boundaries), during her life-time or widowhood; but at her death or intermarriage, then I give and bequeath the above described land to my son, Lewis Atkins, that is to say if he should take care of and maintain me and his mother in our old age; and the rest of my land not deeded away, to be sold on a credit of twelve months, and the money equally divided between Nancy Atkins, now Nancy Mullers, and Elizabeth Hubbs, formerly Atkins, and Rachel Hubbs, formerly Atkins, now deceased, daughter Rachel Hubbs.”
4th. “I give and bequeath unto my grand-son, Talbot Atkins, son of Nathan Atkins, a certain tract of land, lying between Ira Atkins, Israel Walter, the tog of Coon Ridge, and G. W. "Vitteto’s line, the whole of it for his part of the land, and he is to have one horse,” &c.
5th. “1 give and bequeath to my grand-daughter, Lucretia Monroe, formerly Atkins, daughter of Nathan Atkins, one feather-bed, that she claimed when she lived with me, and twenty-five dollars out of my personal property,” &e. Touching the rest of my personal property, in the house and out of doors, I give and bequeath it to my beloved wife, Elizabeth Atkins, for her own benefit during her natural life or her widowhood. Should there be any property left at the death of my wife, Elizabeth, then I want it equally divided between Moses B. Atkins, Elijah Atkins, Robert Atkins, and Lewis Atkins, my four sons, as I have portioned off my five daughters in my life-time, namely, Margaret Burnett, formerly Margaret Atkins, Nancy Mullers, formerly *556 Nancy Atkins, Elizabeth Hubbs, formerly Elizabeth Atkins, Polly Barrett, formerly Polly Atkins; and that I have lotted to Rachel Hubbs formerly Rachel Atkins daughter for her part in the land I have lotted for sale. I have gave Presly Barrett, Archibald Mullers, James Hubbs, and John Burnett, all that I intend for them.”
At the date of the will, and at the death of testator, he was the owner of the tract of land willed to his wife, the tract willed to Talbot Atkins, and two other tracts, one of about sixty acres, and the other about twenty acres. He had previously given, by deed to his grand-son, Ira Atkins, a tract of about sixty acres.
Talbot Atkins, the devisee named in the 4th clause of the will, died without issue, in the life-time of the testator, and the only question for our determination is, what disposition is to be made of the tract of land devised to him? It is our duty to ascertain the intention of the testator as to the disposition of the land, the Revise of which lapsed by the death of the devisee, and if we can find out that he intended to dispose of it, in the event of the devisee’s death in his own life-time, we are bound to carry out that intention, unless it contravenes some stubborn rule of public policy.
It is insisted for the daughters, that they are entitled to the lapsed devise, as residuary legatees, under the following words in the 3d clause, viz: the rest of my land, not deeded away, to be sold on a credit of twelve months, and the money equally divided between (his daughters). These words were not intended to make the daughters residuary devisees. The testator had deeded one tract of sixty acres to his grandson, Ira *557 Atkins, and had two other tracts, one of sixty and the other of twenty acres, which he had not deeded at the date of his will. His intention was to devise these two tracts specifically to his daughters. He says “the rest of my land not deeded away.” The use of the word “deeded,” fixes his meaning, and shows that he used the words, “the rest of my land,” not as residuary words, but to designate the specific share of his daughters in his land.
For the four sons, it is insisted that they are residuary legatees, and as such, entitled to the lapsed devise. Their claim is based upon the language in the 5th clause, viz: “ should there be any property at the death of my wife, then I want it equally divided between” (his four sons). The property here referred to, is the personal property, which he had given to his wife, during her life. Of all the personal property that might be left, at his wife’s death, he intended his four sons to be residuary legatees; but they 'have no claim under this clause to the lapsed devise as residuary legatees.
It is apparent that the testator, when he prepared his will, did not anticipate the death of Talbot in his own life-time, and, therefore, made no provision for that contingency, and died without making any other disposition of the land devised to him. As to this land, he died intestate, and the law distributes it amongst his several heirs, according to the statutes of descent and distribution, the devisee having died without issue.
The decree of the Chancellor will be reversed and the cause remanded, to be proceeded in as herein decreed.
The costs of this court will be paid by the complainants out of the assets of the estate.